IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12-CV-513
(3:04-CR-250-19)

| | | |
|---|---|---|
| RAYMOND ROGER SURRATT, JR. | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate Sentence under 28 U.S.C. § 2255 or, alternatively, under 28 U.S.C. § 2241 or for writ of error coram nobis,[1] (Doc. No. 1), and related pleadings.

This case presents a surfeit of difficult issues: statutory mandatory minimum sentences; the conditions precedent for habeas review; the obligations of inferior courts to divine and follow precedent; retroactivity; notions of finality; and, necessarily and importantly, the fate of a petitioner consigned to life in prison. But in the end it devolves to the issue of whether Petitioner may now pursue his claim that the change in law brought about by United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc), requires that his life sentence be vacated and that he be resentenced. Because Petitioner cannot establish the second prong of the Fourth Circuit's test in In re Jones, 226 F.3d 328 (4th Cir. 2000), for alternative relief under § 2241 – that the

---

[1] At oral argument on the motion held on April 7, 2014, Petitioner conceded that he is not entitled to relief under § 2255 considering the United States Court of Appeals for the Fourth Circuit's denial of his motion under 28 U.S.C. § 2244 to authorize the district court to consider a second or subsequent § 2255 motion. (In re: Surratt, No. 12-283, Doc. No. 6: Order). Therefore, his claim under that provision will be denied. Additionally, because Petitioner remains in custody, and because coram nobis relief is not available to evade the limitation on second or successive § 2255 motions, that claim for alternative relief will be denied. See United States v. Howze, 521 F. App'x 164, 165 (4th Cir. 2013) (affirming denial of attempt to use coram nobis to raise Simmons claim).

subsequent law change rendered the conduct of which he was convicted non-criminal – the petition must be denied.

I.   BACKGROUND

Petitioner, Raymond Roger Surratt, a.k.a. "Little Raymond," a.k.a. 'Little Ramey," (Surratt) was the nineteenth person named in a Superseding Bill of Indictment on October 18, 2004, which charged, among other things, his participation in a conspiracy lasting more than three years to possess with intent to distribute more than fifty grams of crack cocaine in Shelby (Cleveland County), North Carolina (Count One). (Case No. 3:04-cr-250, Doc. No. 104). The evidence against Surratt was strong, including undercover crack purchases from Surratt and inculpating co-conspirator statements. (Id., Doc. No. 520: Presentence Report (PSR) at ¶ 28).

On February 4, 2005, Surratt entered a guilty plea to the conspiracy in Count One pursuant to a written plea agreement. (Id., Doc. No. 201: Plea Agreement; Doc. No. 205: Entry and Acceptance of Guilty Plea). That agreement specified, among other things, that Surratt was aware that his sentence would be a mandatory term of life imprisonment unless reduced for substantial assistance. (Id., Doc. No. 201: Plea Agreement at ¶¶ 4, 24). He waived his right to appeal or collaterally challenge his conviction or sentence except on two grounds not relevant here. (Id. at ¶ 20). After Surratt entered his plea, a magistrate judge released him from jail for the purpose of cooperating with law enforcement with a warning that he would face life imprisonment if he failed to abide by the conditions of his release. (Case No. 3:04-cr-250, Doc. No. 485: Plea Hr'g Tr. at 14-15). Released pretrial, he did little to cooperate. Instead, he engaged in activity consistent with drug trafficking and associated with known drug dealers; therefore, the Court revoked his bond after a hearing. (Id., Doc. No. 453: Bond Hr'g Tr. at 8-11, 29-30, 53-54).

Surratt did not contest the relevant conduct amount of 210.9 grams of crack. (Id., Doc. No. 520: PSR at ¶ 28). The offense of conviction was consistent with Surratt's decades-long criminal history in Shelby, which filled five pages in the PSR with convictions for, among other things, numerous state drug offenses and probation revocations based at least in part on drug usage and dealing. (Id. at 12-16). These convictions scored more than enough points for Criminal History Category VI (without resorting to the career offender guideline) even though he had just turned thirty years old at the time of his arrest. (Id. at ¶ 62). Additionally, the Government filed a notice pursuant to 21 U.S.C. § 851 to seek an enhanced punishment based on three prior felony drug offenses. (Case No. 3:04-cr-250, Doc. No. 192).[2]

This combination of serious drug trafficking and recidivist criminal history required the Court to impose a mandatory life sentence pursuant to 21 U.S.C. § 841(b)(1)(A) on October 31, 2005. (Id., Doc. No. 325: Judgment at 1-2). At both the bond revocation and sentencing hearings, Surratt proffered information and testimony from family members and friends tending to show that he was "a hard worker, loving son, devoted brother and a deeply affectionate father." (Id., Doc. No. 699: Sent. Hr'g Tr. at 5). Such evidence concerning the history and characteristics of a defendant is normally probative on the sentencing factors and purposes set forth in 18 U.S.C. § 3553(a), but was made irrelevant by the statutory mandatory minimum. The inability to fashion Surratt's sentence based on all relevant evidence has troubled the Court to this day.

On direct appeal, appellate counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), stating there were no meritorious grounds for appeal, but questioning the reasonableness of the sentence. United States v. Surratt, 215 F. App'x 222, 223 (4th Cir. 2007).

---

[2] The docket entry for Document Number 6 mistakenly shows it as a § 851 notice. In reality it is a motion to unseal the indictment.

Surratt filed a pro se supplemental brief arguing that his plea was not voluntary and that his trial counsel was ineffective. Id. On January 29, 2007, the Fourth Circuit found no meritorious issues for appeal and affirmed the conviction and sentence. Id. at 224. The Supreme Court denied his petition for writ of certiorari on May 14, 2007. Surratt v. United States, 550 U.S. 949 (2007).

On April 22, 2008, Surratt filed pro se Motions to Vacate pursuant to 28 U.S.C. § 2255 based on ineffective assistance of counsel and for sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) based on retroactive amendments to the USSG relating to crack cocaine. (Case No. 3:08-cv-181: Doc. No. 1: Motion to Vacate; Case No. 3:04-cr-250, Doc. No. 565: Motion for Sentence Reduction). On February 24, 2011, this Court denied both motions, finding Surratt's complaints about his trial counsel were conclusory and that the guideline amendments did not alter the applicable statutory mandatory minimum penalty. (Case No. 3:08-cv-181: Doc. No. 8: Order; Case No. 3:04-cr-250, Doc. No. 692: Order). The Court declined to issue a certificate of appealability of the § 2255 decision, (Case No. 3:08-cv-181: Doc. No. 11: Notice of Appeal), as did the Fourth Circuit on September 7, 2011, United States v. Surratt, 445 F. App'x 640 (4th Cir. 2007).

Meanwhile, on June 24, 2010, the Supreme Court decided Carachuri-Rosendo v. Holder, 560 U.S. 563 (2010), examining provisions of the Immigration and Nationality Act, 8 U.S.C. § 1229b(a)(3), that allow an alien to seek cancellation of removal if he has not been convicted of an "aggravated felony." The Court concluded Carachuri-Rosendo had not been so convicted because his predicate conviction contained no finding of fact of a prior drug conviction; thus, he had not actually been convicted of an offense punishable by a term exceeding one year. Carachuri-Rosendo, 560 U.S. at 576-77.

On August 17, 2011, the Fourth Circuit, sitting en banc and relying on Charachuri-Rosendo, held that under the "unique statutory regime mandated by the North Carolina Structured Sentencing Act," a defendant's state Class I felony and prior record level did not actually expose him to a sentence greater than one year. Simmons, 649 F.3d at 240, 243. For purposes of federal sentencing, then, the state felony conviction could not be used to enhance Simmons's punishment as a "felony drug offense" under 21 U.S.C. § 841(b)(1)(B). Id. at 248-49. Simmons overruled United States v. Harp, 406 F.3d 242 (4th Cir. 2005), which had held that to determine whether a conviction is for a crime punishable by a prison term exceeding one year under North Carolina law, the maximum aggravated sentence that could be imposed for the crime of conviction was considered. Id. at 241. Harp was the law in effect at the time of Surratt's sentencing, direct appeal, and first collateral attack. It had been affirmed by two panels in the Simmons litigation, one of which included a former Justice of the United States Supreme Court. See Whiteside v. United States, --- F.3d ---, No 13-7152, slip op. at 48 (4th Cir. April 8, 2014) (Wilkinson, J., dissenting).

On August 15, 2012, Surratt, through former trial counsel, filed the instant Motion to Vacate under 28 U.S.C. § 2255, with included petitions for alternative relief under 28 U.S.C. § 2241 or writ of error coram nobis. (Doc. No. 1). He argues, in light of Simmons, that he has only one qualifying prior felony drug offense resulting in a mandatory minimum of twenty years, not life. (Id. at 3). On the same day, he filed an application before the Fourth Circuit to file a successive § 2255 motion pursuant to 28 U.S.C. § 2244(3). The Government opposed, (Case No. 12-283, Doc. No. 5), and the Fourth Circuit refused to authorize the district court to consider Surratt's second § 2255 motion on September 13, 2012, (Id., Doc. No. 6: Order).

On February 6, 2014, the Government filed a response before this Court arguing that Surratt is not eligible for relief under § 2255 because his petition is successive and he cannot meet the requirements of § 2255(h), but nonetheless conceding that he is entitled to relief under the savings clause in § 2255(e) and § 2241. (Doc. No. 3: Response at 1-2). The Court scheduled oral argument and propounded questions for the parties to answer at a hearing on April 7, 2014. (Doc. Nos. 4, 6: Orders). Having considered the arguments of counsel and additional pleadings by Surratt, (Doc. Nos. 5, 7), this matter is ripe for disposition.[3]

II. DISCUSSION

A federal prisoner who seeks to challenge the legality of his conviction or sentence generally must proceed pursuant to § 2255. Rice v. Rivera, 617 F.3d 802, 807 (4th Cir. 2010). However, a petitioner may seek a writ of habeas corpus in the district of confinement pursuant to § 2241 in limited circumstances covered by the "savings clause" in § 2255(e), where § 2255 "is inadequate or ineffective to test the legality of his detention." Jones, 226 F.3d at 333. The mere fact that an individual is procedurally barred from filing a § 2255 motion does not render that provision inadequate or ineffective. Rice, 617 F.3d at 807.

A. District of Confinement

A § 2241 petition can only be filed in the "district of confinement." United States v. Poole, 531 F.3d 263, 264, 273 (4th Cir. 2008) (citing Rumsfield v. Padilla, 542 U.S. 426, 447 (2004); Jones, 226 F.3d at 332. No other court has jurisdiction over a challenge to present physical confinement. Padilla, 542 U.S. at 443. Here, Surratt was confined USP Lewisburg in Lewisburg, Pennsylvania, within the Middle District of Pennsylvania, when he filed the instant § 2241 motion in the Western District of North Carolina. Jurisdiction would appear to be lacking

---

[3] At the conclusion of the hearing, the Court offered the parties an additional opportunity to present further arguments; however, they later declined.

in light of Poole, Padilla, and Jones. At the hearing, however, the Government orally waived objection to the location of filing and indicated its intent to litigate the Simmons issue in this District. Notwithstanding the waiver, the Court must satisfy itself that it has jurisdiction to entertain the merits of the § 2241 motion. See United States v. Rodriquez, 433 F.3d 411, 414 n.6 (4th Cir. 2006) (government's concession that defendant should be resentenced does not end inquiry; court is not at liberty to act on concession alone).

The Government relies on Kanai v. McHugh, 638 F.3d 251 (4th Cir 2011), for the proposition that § 2241 jurisdiction is waivable. In that case, a former West Point cadet challenged the denial of his discharge application as a conscientious objector through a § 2241 petition filed in the District of Maryland, even though he had no commanding officer there. Id. at 254-55. The Army objected to the district court's subject-matter jurisdiction on appeal, but had failed to do so below. Id. at 255. The Fourth Circuit rejected this argument, holding the district of confinement limitation was waiviable as a matter of personal jurisdiction or venue, not subject-matter jurisdiction. Id. at 258. In reaching that conclusion, the appellate court examined a footnote in Padilla[4] and found that the Supreme Court rejected the Government's subject-matter argument in that case. Id. at 257. Thus, any challenge to habeas proceedings based on place of filing was waived if not timely asserted. Id. at 258. See also Moore v. Olson, 368 F.3d 757 (7th Cir. 2004) (Judge Easterbrook's cogent analysis of subject-matter jurisdiction, personal jurisdiction, and venue, concluding that the district of confinement filing requirement in §

---

[4] The majority opinion notes:
> The word "jurisdiction," of course, is capable of different interpretations. We use it in the sense that it is used in the habeas statute, 28 U.S.C. § 2241(a), and not in the sense of subject-matter jurisdiction of the District Court.

Padilla, 542 U.S. at 434 n.7.

7

2241(a) is a waivable venue provision). Therefore, the Court finds Surratt's failure to file in the district of confinement is not a barrier in the circumstances of this case.

      B.      Savings Clause

Surratt and the Government contend that relief is available under § 2241 because § 2255 is inadequate or ineffective to address his claim. (Doc. No. 1: Motion at 14; Doc. No. 3: Response at 5). They recognize that the gateway to § 2241 is the "savings clause" contained in 2255(e), which reads:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained … unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

Unlike the § 2241 district of confinement filing requirement addressed above, § 2255(e)'s "shall not be entertained" language is imperative and connotes that Congress has limited subject-matter jurisdiction over § 2241 motions through the savings clause. Bryant v. Warden, 738 F.3d 1253, 1262-63 (11th Cir. 2013). The "great weight of authority" supports this understanding of § 2255(e)'s jurisdictional nature. Williams v. Warden, 713 F.3d 1332, 1340 (11th Cir. 2013) (collecting cases from the Second, Fourth, Sixth, Seventh, Eighth, and Ninth Circuits). Thus, a court may not accept the Government's concession of the savings clause's applicability. Bryant, 738 F.3d at 1270-71; see also Rice, 617 F.3d at 806–07 (government's "distasteful" practice of reversing positions on court's jurisdiction to consider § 2241 relief was "irrelevant" because court must satisfy itself of its own jurisdiction).

Section 2255(e) has been variously called a portal, a draw bridge, an escape hatch, a safety valve, and a path, and requires a petitioner to demonstrate § 2255's inadequacy or ineffectiveness before being heard on a § 2241 motion. The tripartite test enunciated by the Fourth Circuit to determine § 2255's inadequacy or ineffectiveness is:

8

> (1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

Jones, 226 F.3d at 333-34; Farrow v. Revell, 541 F. App'x 327, 328 (4th Cir. 2013).

There is no question that Surratt meets the first and third prong. But his request founders on the second requirement. The Fourth Circuit has confined savings clause review to situations in which a subsequent change in law makes petitioner's conduct "non-criminal." Compare San-Miguel v. Dove, 291 F.3d 257, 261 n.2 (4th Cir. 2002) (Apprendi drug quantity error affecting maximum sentence not reviewable); with Jones, 226 F.3d at 333 (Bailey "use" of firearm claim is reviewable). It has repeatedly acknowledged that its precedent has "not extended the reach of the savings clause to those petitioners challenging only their sentence." Poole, 531 F.3d at 267 n.7; see also Whiteside, --- F.3d ---, No 13-7152, slip op. at 10 n.4 (quoting Poole); Farrow, 541 F. App'x at 328 (citing Poole). Because Surratt contests the applicability of his mandatory minimum sentence and not the validity of his conviction, he fails to meet the jurisdictional test.

Surratt, citing other circuits, alleges that something less than decriminalized conduct supports proceeding through the savings clause portal to § 2241 relief. He suggests that the test "might be" not decriminalized conduct but rather "statutory sentencing enhancements originally applied [which] are now deemed to be illegal."[5] (Doc. No. 5: Supplement at 4). He is emboldened by footnote 4 in Whiteside to believe his sentencing claim is cognizable, (Doc. No. 7: Second Supplement at 2), yet the majority opinion "expressly" recognized that issue was not before the appellate court. Such a reformulated test would greatly expand habeas relief in a

---

[5] As addressed below, the Government likewise seeks to add a "sufficiently fundamental" defect prong to the Jones test. (Doc. No. 3: Response at 18-23 ("the effect of a mandatory minimum is severe enough to warrant resort to the savings clause")).

9

manner the Fourth Circuit has not previously allowed; thus, this inferior court is not at liberty to deviate from the actual test articulated in Jones for one that might be.

In an effort to assist Petitioner, the Government attempts to relegate the decriminalized conduct limitation in the second Jones prong to its facts – Bailey-type cases which in fact involve conduct that is no longer considered criminal. (Doc. No. 3: Response at 9). But the Fourth Circuit has not chosen to read it so narrowly. Indeed, in Farrow it did just the opposite – it concluded that a petitioner's challenge to an Armed Career Criminal Act (ACCA) sentencing enhancement was not cognizable under § 2241 via § 2255(e), but his challenge to the underlying 18 U.S.C. § 922(g)(1) conviction was. Farrow, 541 F. App'x at 328. At oral argument, the Government dismissed this decision as not "very authoritative," in part, because the appellate court did not have the benefit of a brief from the prosecution. Surratt casts it away as "mistaken" and based on a "misreading" of Poole. (Doc. No. 7: Second Supplement at 1-2). This Court may not be so cavalier.

Albeit unpublished, the decision has strong implications for the issue presented here. There, a petitioner received an enhanced sentence where both the mandatory minimum and the maximum punishment were raised solely on prior "felony" criminal convictions. Farrow, 541 F. App'x at 328. In light of Simmons, he asserted that his prior convictions could no longer support that increased punishment. Id. Yet, even though his direct appeal and § 2255 motion were decided prior to Simmons, the Fourth Circuit prohibited him from challenging the enhanced sentence in a § 2241 motion. Id. Here as well, Surratt seeks to challenge his sentence enhanced by prior convictions no longer considered "felonies" supporting the increased punishment in light of Simmons.

Jones is rather explicit as to why § 2241 relief is limited to those cases involving conduct no longer deemed criminal: the remedy is extraordinary and the number of circumstances in which it should apply is limited. 226 F.3d at 333; see also Bryant v. Warden, 738 F.3d 1253, 1280 (11th Cir. 2013) (recognizing Fourth Circuit's test limited to decriminalized conduct and not sentencing issues, citing Poole). This is, after all, Surratt's fourth round of litigation, following initial district court proceedings, direct appeal, § 2255 attack, and attempted successive § 2255 attack. Opening the previously closed escape valve to enhanced but within the statutory maximum sentences would flood federal courts in a perpetual tide of § 2241 motions. See Bryant, 738 F.3d at 1268 (court wary of interpreting savings clause in a way that would "eviscerate" § 2255(h)'s bar on successive motions and open courts to "endless stream" of prisoner litigation). Again, this Court must respect the existing dam that holds back the sentencing claim raised by Surratt.

The parties rightly note varying tests among the circuits used to define the reach of the savings clause. (Doc. No. 3: Response at 9; Doc. No. 5: Supplement at 4). As detailed in Bryant, the Eleventh Circuit applies a five-part test that extends beyond decriminalized conduct to § 922(g)(1) sentences no longer subject to the ACCA, generally in keeping with the approach of the First, Sixth, and Ninth Circuits. 738 F. 3d at 1278, 1280. Most permissively, the Seventh Circuit's three-part test additionally allowed, prior to Booker, challenges based on career offender guidelines. Id. at 1280-81. Most restrictively, the Tenth Circuit will only allow a claim when barring it would render § 2255(h) unconstitutional, but has yet to identify such a circumstance. Id. at 1279. Likewise, the Eighth Circuit has not used the savings clause to address conduct or sentencing claims. Id. at 1281. The Second, Fifth, and, as noted above,

11

Fourth Circuits allow the savings clause to reach conduct later determined not be criminal but not sentences. Id. at 1280.

Even if the Court were to move in the direction of Bryant as suggested by the parties,[6] (Doc. No. 3: Response at 7-9; Doc. No. 7: Second Supplement at 2), Surratt would not be entitled to relief because his sentence was not in excess of the statutory maximum for his offense.[7] Bryant, 738 F.3d at 1283, 1288 (recognizing "serious, constitutional, separation-of-powers concerns that attach to sentences above the statutory maximum penalty authorized by Congress," but "any § 2241 challenge to a sentence that is already *below* the authorized statutory maximum could not open the § 2255(e) portal." (emphasis in original)). Additionally, this Court is obligated to apply the Fourth Circuit's Jones test as it exists at this time, which has not yet been extended to cover claims challenging only a sentence.[8] See Whiteside, --- F.3d ---, No 13-7152, slip op. at 10 n.4 (noting this limitation on reach of savings clause); Poole, 531 F.3d at 267

---

[6] Of course, such movement would conflict with the Fourth Circuit's recent holding in Farrow, which reached the opposite result of Bryant. Compare Farrow, 541 F. App'x at 328 (challenge to ACCA status not cognizable in a § 2241 petition), with Bryant, 738 F.3d at 1288 (allowing § 2241 challenge to sentence enhanced by ACCA following Begay).

[7] Surratt pled guilty to conspiring to possess with intent to distribute more than fifty grams of cocaine base. (Case No. 3:04-cr-250, Doc. No. 201: Plea Agreement; Doc. No. 205: Entry and Acceptance of Guilty Plea). At that time, he faced a statutory penalty of ten years to life under 21 U.S.C. § 841(b)(1)(A), without any qualifying convictions. Thus, even though the imposed life sentence is draconian, it did not exceed the maximum allowed by statute.

[8] Perhaps the Supreme Court will someday resolve the split among the circuits. Perhaps the Fourth Circuit will adopt a new test. Those courts, not this one, retain the prerogative to alter precedent. Rodriguez de Quias v. Shearson/Am. Express, Inc., 490 U.S. 477, 484 (1989)("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its prior decisions."). The Fourth Circuit repeatedly has followed this dictate. See e.g. United States v. Slott, --- F. App'x ---, No. 12-5011, slip op. at 1 (4th Cir. Jan. 8, 2014) (rejecting defendant's proposed alternative proportionality review analysis and concomitant "drastic break with precedent"); United States v. Cheek, 415 F.3d 349, 353-54 (4th Cir. 2005) ("Even were we to agree with Cheek's prognostication that it is only a matter of time before the Supreme Court overrules Almendarez-Torres, we are not free to overrule or ignore the Supreme Court's precedents.").

n.7 (same); Farrow, 541 F. App'x at 328 (same). Thus, the parties' reliance on the law of other circuits is both overstated and irrelevant.

  C.  Separate Offense

In embracing Surratt's request to vacate his sentence, the Government makes a novel argument that the sentence enhanced by prior convictions resulted from a separate and distinct offense defined by Congress. Drawing on language in Simmons, the Government reasons that

> when a defendant is subject to one range of penalties for a core offense (e.g. ten years to life imprisonment for a drug offense punishable under § 841(b)(1)(A)), but to a stepped-up mandatory minimum for a recidivist drug offense (e.g., twenty years to life for a drug offense after "a prior conviction for a felony drug offense has become final" or to "a mandatory term of life imprisonment without release" if the defendant has "two or more prior convictions for a felony drug offense"), the recidivist drug offense constitutes an "aggravated offense."

(Doc. No. 3: Response at 15). Thus, Surratt is "actually innocent" of the recidivist drug crime, seemingly satisfying the decriminalized conduct requirement in the second prong of the Jones test. (See also Doc. No. 1: Motion at 6 (Surratt's claim that he is actually innocent of prior conviction "element" in 21 U.S.C. § 841(b)(1)(A)).

This reasoning has surface appeal. To be sure, the language quoted in the Government's pleading does appear in Simmons, but the gloss applied to it obscures the view of its original context. In Carachuri-Rosendo, the Supreme Court examined 21 U.S.C. § 844(a) and found "[f]or present purposes, we therefore view § 844(a)'s felony simple possession provision as separate and distinct from the misdemeanor simple possession offense that section also prescribes. 560 U.S. 563, 568 n.3 (2010). Those "present purposes" involved a person's eligibility to seek cancellation of removal if he had not been convicted of an "aggravated felony." Id. at 566. Thus, the characterization of a prior conviction as a crime punishable as a federal felony was the essential question in that case. Simmons, 649 F.3d at 241. In Simmons,

the Fourth Circuit dissected North Carolina's "unique statutory regime" to determine whether a state prior conviction was actually punishable by imprisonment for more than one year, that is, a "felony drug offense" under federal law.[9] 649 F.3d at 239-40. Tellingly, the Fourth Circuit noted the district court's characterization of the state prior conviction errantly triggered "a sentencing enhancement" under 21 U.S.C. § 841(b)(1)(B) and vacated the sentence. Id. Had the case truly been decided as the Government and Surratt argue, the appellate court would have found Simmons actually innocent of a separate and distinct recidivist drug crime and vacated the conviction. But it didn't; it only vacated the sentence. Id. at 250.

In the same way, the Government's analysis of the impact of Alleyne v. United States, 133 S. Ct. 2151 (2013), (Doc. No. 3: Response at 21-22), is flawed. The Supreme Court ruled in that case that a fact that increases a statutory minimum sentence, just like a fact that increases a statutory maximum sentence, is an element of a distinct and aggravated crime, not simply a sentencing factor.[10] Alleyne, 133 S. Ct. at 2162-63. The Government notes, (Doc. No. 3: Response at 21), but then sidesteps the limitation in the opinion that the fact of a prior conviction remains an exception to the general rule under Almendarez-Torres v. United States, 523 U.S. 224 (1998). Alleyne, 133 S. Ct. at 2160 n.1. The Supreme Court described the exception as

---

[9] At oral argument, amicus counsel for Surratt from the Federal Defenders of North Carolina, Inc., argued that Simmons held that a recidivist offense is a different offense than a nonrecidivist offense. As noted above, the Fourth Circuit did reach that conclusion as to North Carolina's "unique" Structured Sentencing Act and opined about the Supreme Court's analysis of § 844(a)'s misdemeanor and felony offenses in Carachuri-Rosendo. Simmons, 649 F.3d at 246-47. However, the extrapolating argument divorces such language in the decision from its limited context. The appellate court did not seek to apply that reasoning to parsing § 841 into separate offenses, nor have the parties shown any subsequent case to do so.

[10] The Fourth Circuit applied similar reasoning in vacating a conviction where the indictment did not allege a "death results" bank robbery offense, but the Court imposed a mandatory life sentence based on jury's factual finding. United States v. Whitfield, 695 F.3d 288, 310 (2012) (18 U.S.C. § 2113(e) creates separate offenses with distinct elements depending on whether a defendant killed any person, forced a person to accompany him, or death resulted).

"narrow," but it has wide implications for this case in which prior convictions are the only "facts" at issue.

In Almendarez-Torres, the Supreme Court recognized that lower courts have "almost uniformily" interpreted recidivist provisions in statutes as sentencing factors, not as creating new crimes and that its decisions have not deviated from the principle that "recidivism does not relate to the commission of the offense, but goes to the punishment only…." 523 U.S. at 230 (internal quotation marks and citations omitted). In turn, the Fourth Circuit has repeatedly relied on Almendarez-Torres to find that that 21 U.S.C. § 841 does not define separate crimes depending on criminal history.[11] In United States v. Estrada, the appellate court rejected a defendant's argument, similar to the Government's here, that prior convictions were elements of § 841(b)(1)(A) with each "graduated mandatory minimum" constituting a separate crime because recidivism is a traditional sentencing factor. 428 F.3d 387, 390 n.1 (4th Cir. 2005). Again, in United States v. Jones, the Fourth Circuit rejected a defendant's Apprendi claim that § 841(b)(1)(A) and (B) created separate crimes with prior convictions being elements of those "aggravated offenses." 270 F. App'x 268, 270 (4th Cir. 2008). The appellate court found that the claim failed "because Apprendi specifically excepted prior convictions from its holding" and cautioned that Almendarez-Torres "may not be ignored."[12] Id.

---

[11] The wake of Simmons has not drowned the Fourth Circuit's reliance on the prior conviction exception in Almendarez-Torres. See e.g. United States v. McDowell, 745 F.3d 115, 124 (4th Cir. 2014) (Almendarez-Torres remains good law which may not be disregarded); United States v. Rudolph, --- F. App'x ---, No. 13-4545 (4th Cir. Mar. 26, 2014) (rejecting argument that prior convictions were elements of 18 U.S.C. § 922(g)(1) offense enhanced by prior convictions according to § 924(e)); and United States v. Mill, --- F. App'x ---, No. 13-4344 (4th Cir. Feb. 19, 2014) (prior conviction used to enhance 21 U.S.C. § 841(b)(1)(A) sentence not required to be pled in indictment or submitted to jury).
[12] In so deciding, the Fourth Circuit cited United States v. Cheek, 415 F.3d 349 (4th Cir. 2005). There, the appellate court found a defendant's ACCA status was distinct from the § 922(g)(1)

This Court cannot rely on the fictional reed offered by the Government, that is, <u>Alleyne</u>, which specifically recognized the prior conviction exception to its holding, somehow compels the novel conclusion, never before reached by an appellate court, that 21 U.S.C. § 841 is comprised of separate offenses defined by prior convictions, such that a person is actually innocent of a distinct crime if a prior conviction is later deemed not to be a "felony." Indeed, that characterization of § 841 and like statutes has been repeatedly rejected before and after <u>Carachuri-Rosendo</u>, <u>Simmons</u>, and <u>Alleyne</u>. The Court harbors continuing reservations about the imposition of Surratt's life sentence without the opportunity to examine otherwise applicable § 3553(a) factors, but it is clear from <u>Almendarez-Torres</u> that his recidivism – "a traditional, if not the most traditional" basis for a sentencing court's increasing an offender's sentence – is a mere penalty provision, does not serve to define a separate offense, and does not violate due process or other constitutional limits on Congress' power to define crimes and punishments. <u>Id.</u> at 1230. Therefore, he has not satisfied the second prong of the <u>Jones</u> test to open the safety valve in § 2255(e) to obtain relief under § 2241.

D.  Due Process

Finally, the Government's reliance on <u>Hicks v. Oklahoma</u>, 447 U.S. 343 (1980), for the proposition that the Court should use the safety valve to remedy a sentence based on a mandatory minimum punishment later deemed invalid as a due process violation fails to take into account the procedural stage of this litigation and the <u>Jones</u> test. (Doc. No. 3: Response at 18-20). In <u>Hicks</u>, a defendant was sentenced to a mandatory forty years' imprisonment based on an Oklahoma statute later found to be unconstitutional by the state appellate court in a different case. 447 U.S. at 345. When his direct appeal was denied on the basis that he was sentenced

---

offense tried before the court, in part, because "it has been the longstanding custom for over 200 years to treat recidivism as a sentencing factor, and not as an element of the offense." <u>Id.</u> at 353.

16

within the range of punishment he faced without the mandatory provision, he petitioned to the Supreme Court. Id. The Supreme Court found that the state arbitrarily deprived him of the opportunity to be resentenced without the mandatory provision in place, resulting in a due process violation under the Fourteenth Amendment. Id. at 346.

The Government jumps to the conclusion that Surratt is entitled to habeas corpus relief through the safety valve to rectify a fundamental unfairness in the imposition of his mandatory sentence. (Doc. No. 3: Response at 19-20). However, as detailed above, the Jones test for re-litigating a conviction through § 2255(e)'s safety valve requires, in part, a petitioner's conduct to no longer be considered criminal. 226 F.3d at 334. Thus, the Eleventh Circuit noted a claim about a prior conviction used to enhance a sentence, which may be considered in a first § 2255 motion, is inadequate to open the safety valve because the miscarriage of justice standard does not apply. Williams, 713 F.3d at 1345-46; see also San-Miguel, 291 F.3d at 261 n.2 (Apprendi error which increased maximum sentence not cognizable under § 2241, in part, because underlying drug trafficking conduct remained criminal). Surratt's similar sentencing claim is likewise inadequate to trigger § 2241 relief via § 2255(e).[13]

III. CONCLUSION

After reviewing the entire record, the Court finds that Petitioner is not entitled to relief on any of his claims.

---

[13] Of course, the Executive Branch holds the power to commute sentences and has signaled its willingness to do so in drug cases with severe sentences. See Charlie Savage, Obama Commutes Sentences for 8 in Crack Cocaine Cases, N.Y. Times, December 19, 2013, http://www.nytimes.com/2013/12/20/us/obama-commuting-sentences-in-crack-cocaine-cases.html?pagewanted=all&_r=0. The Court is mindful of Blackstone's warning regarding the separation of powers and the need for judicial restraint: "And law without equity, though hard and disagreeable, is much more desirable for the public good, than equity without law; which would make every judge a legislator, and introduce most infinite confusion …" Hutchinson v. Florida, 677 F.3d 1097, 1099 n.2 (11th Cir. 2012) (recognizing court is not free of rules of law and must follow precedent where it exists).

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DISMISSED** as successive;

2. Petitioner's alternative Petition for Relief under 28 U.S.C. § 2241, (Doc. No. 1), is **DENIED**; and

3. Petitioner's alternative Petition for Writ of Coram Nobis, (Doc. No. 1), is **DENIED**.

**IT IS FURTHER ORDERED** that, pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability as to Petitioner's § 2255 Motion to Vacate because he has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

Signed: May 16, 2014

Robert J. Conrad, Jr.
United States District Judge